UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AZIZUL ISLAM,

                  Petitioner,

      -vs-                                     Civil Action No:

RAYMOND BOOKER,
Warden Ryan Correctional Center,

                  Respondent.

_____/

PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

      NOW COMES Petitioner, AZIZUL ISLAM, by and through his attorney, WILLIAM W. SWOR, and pursuant to 28 USC §2254, petitions this Court to issue a writ of habeas corpus, and in support of his petition states as follows:

      1.      Petitioner was charged in the underlying matter in the Wayne County (Michigan) Circuit Court with one count of first degree murder, MCL 750, and one count of mutilation of a corpse, MCL 750.

      2.      Petitioner was sentenced on April 30, 1998 by the Honorable Patricia Fresard, judge of the Wayne County Circuit Court, to life in prison for First Degree Murder.

      3.      Petitioner is presently unconstitutionally confined at at the Ryan Road Correctional Center in Detroit, Michigan. The Warden at the Ryan Road Correctional Center is Raymond Booker.

      4.      As described in detail in the accompanying brief, this case has a long and complicated history. The direct appeal in this case resulted in affirmation of the Petitioner's

conviction, but a subsequent motion for New Trial, filed pursuant to MCR 6.500 was granted by the

trial court.  The Michigan Court of Appeals reversed the trial court's decision, and the Michigan

Supreme Court denied leave to appeal.

     5.    As to the particular claim raised herein, as required by 28 USC §2254(b), Petitioner
has exhausted all state remedies available to him at the time of this petition by taking the following
steps:

> (a)  Petitioner unsuccessfully appealed his conviction and sentence
> as of right;
>
> (b)  Petitioner subsequently filed, and was afforded a hearing, on his
> motion for new trial on  March 9, 2004, after which the trial court
> granted him a new trial;
>
> (c)  Following the grant of a new trial by the Hon. Patricia Fresard,
> the trial judge in this case, the prosecution appealed to the Michigan
> Court of Appeals.  Judge Fresard's decision was reversed, and the
> conviction was reinstated by the Michigan Court of Appeals in an
> opinion dated December 6, 2005, 2005 WL 3304105.  Dr. Islam's
> request for rehearing was denied by the Court of Appeals; and
>
> (d)  Petitioner filed an application for leave to appeal in the
> Michigan Supreme Court, and his application was denied on April
> 13, 2007.

     6.    The following meritorious ground requires this Court's grant of a writ of habeas

corpus:

> PETITIONER WAS DENIED FUNDAMENTAL DUE PROCESS,
> & A FAIR TRIAL, IN VIOLATION OF US CONST, AM V, VI &
> XIV, WHEN HIS CONVICTION WAS BASED ON
> DEMONSTRABLY FALSE, MATERIAL TESTIMONY, WHICH
> IS STRUCTURAL ERROR AND NOT SUBJECT TO ANY
> HARMLESS ERROR ANALYSIS

     7.    Petitioner raised this claim throughout the direct appeal.  The claim was accepted by

the trial court but was rejected on the prosecutor's appeal to the Michigan Court of Appeals and on

Petitioner's appeal to the Michigan Supreme Court.  As to this claim, Petitioner has met the

-2-

requirements of 28 USC §2254 in the following manner:

> a) The decision rendered by the Michigan appellate courts was "contrary to [and] involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States", 28 USC 2254(d)(1); and

> b) The Michigan appellate courts made "an unreasonable determination of the facts in light of the evidence presented in the ..." state trial court on remand. 28 USC §2254(d)(2).

8.     This petition is timely as it is being filed within one year from the "completion" of Petitioner's direct appeal.

9.     Petitioner is restrained and imprisoned pursuant to a conviction that violates the Constitution of the United States and pursuant to a sentence that is illegal and void.

WHEREFORE, based upon all of the foregoing and based upon the reasons and arguments set forth in the accompanying brief, Petitioner Azizul Islam respectfully petitions this Court to issue a writ of habeas corpus in this matter and for such other relief as equity and justice require.

Respectfully submitted,

_____

WILLIAM W. SWOR (P21215)
Attorney for Petitioner
3060 Penobscot Building
645 Griswold
Detroit MI  48226
(313) 967-0200

Dated: April 14, 2008

-3-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AZIZUL ISLAM,

                Petitioner,

      -vs-                               Civil Action No:

RAYMOND BOOKER,
Warden Ryan Correctional Center,

                Respondent.
_____/

BRIEF IN SUPPORT OF PETITION
FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

WILLIAM W. SWOR (P21215)
Attorney for Petitioner
645 Griswold, Suite 3060
Detroit, Michigan 48226
(313) 967-0200

## TABLE OF CONTENTS

CASE HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

STATEMENT OF §2254 JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF MATERIAL PROCEEDINGS AND FACTS  . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENTS

I.   THE   MICHIGAN   COURT   OF   APPEALS   MADE   UNREASONABLE
     INTERPRETATIONS OF FACT WHEN IT SUBSTITUTED  ITS
            VIEW OF THE EVIDENCE FOR THAT OF THE TRIAL COURT . . . . . . . . . . 4

     A.   Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.   The Trial Court Used the Correct Standard . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Abuse of Discretion Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     D.   The Trial Court Reached the Correct Decision in
          Granting a New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.  THE COURT OF APPEALS CLEARLY ERRED IGNORING SUBSTANTIAL
     FEDERAL CONSTITUTIONAL GUARANTEES OF FAIR TRIAL  . . . . . . . . . . . . . 10

     A.   Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.   Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     C.   Some  History of "Harmless Error and Automatic Reversal" . . . . . . . . . . . . . . 15

CONCLUSION AND RELIEF SOUGHT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## CASE HISTORY

Dr. Azizul Islam was convicted of first degree murder and mutilation of body parts, after a jury trial before the Hon Patricia Fresard, judge of the Wayne County Circuit Court.  On April 30, 1998, he was sentenced to mandatory life in prison on the first degree murder conviction and, concurrently, 4 to 10 years on the mutilation conviction.

Defendant appealed the conviction to the Michigan Court of Appeals. The Court of Appeals affirmed the Defendant's conviction and sentence, in an unpublished Per Curium Opinion dated December 13, 2002.  Defendant's Motion for Rehearing was denied January 28, 2003.  This Court denied Leave to Appeal in July 2003.

Defendant subsequently filed a motion for new trial pursuant to MCR 6.500 et seq. in the trial court.  The trial court interpreted the motion as a motion for relief from judgment.  After a hearing  in which the prosecution admitted that false evidence had been presented before the jury, the trial court ordered a new trial.

The Michigan Court of Appeals granted the prosecution leave to appeal the grant of a new trial.  On December 6, 2005 the Court of Appeals issued an opinion and order reversing the decision of the trial court.

Dr. Islam sought leave to appeal the matter to the Michigan Supreme Court.  On April 13, 2007 that court denied the application.  Dr. Islam now requests that this Court review the matter and grant this application for a Writ of Habeas Corpus and reverse or vacate the decision of the Court of Appeals

## STATEMENT OF §2254 JURISDICTION

This is a Petition for a Writ of Habeas Corpus filed pursuant to 28 USC §2254. It is filed within one year of the final action by the courts of the State of Michigan on the direct appeal taken by the prosecution on the trial court's order granting Petitioner a New Trial based upon the prominent role that false testimony and evidence played in Petitioner's trial and conviction.

The Michigan Court of Appeals issued its opinion in this matter on December 6, 2005. The Michigan Supreme Court denied Petitioner's Application for Leave to Appeal that opinion on April 13, 2007.

Petitioner alleges that the appellate courts of the State of Michigan unreasonably interpreted and applied soundly established Federal Constitutional law, and unreasonably interpreted facts that were introduced into evidence, contrary to the way in which they were found by the trial court which granted Petitioner's Motion for a New Trial.

Petitioner alleges that the use of false evidence by the prosecution is structural error which does not require knowing involvement by the prosecution to require a new trial. Petitioner also alleges that this kind of structural error is not subject to harmless error analysis.

# INDEX OF AUTHORITIES

## CASES:

*Alken-Ziegler v Waterbury Headers Corp.,* 461 Mich 219, 600 NW2d 638 (1999) . . . . . . . . . . . 8

*Adler v Flint City Coach Lines, Inc.,* 364 Mich 29, 110 NW2d 606 (1961) . . . . . . . . . . . . . . . . 7

*Akcirta v State of Texas,* 355 US 28, 78 S Ct 103, 2 L Ed2d 9 . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barker v Yukins,* 199 F3d 867, 1999, Fed App 0416P (1999) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Bollenbach v United States,* 326 US 607, 614 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brady v Maryland,* 373 US, 83 S Ct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chapman v California,* 386 US 18, 87 S Ct 824, 17 L Ed2d 705,
    24 ALR 3d 1065 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Coleman v. Thompson,* 501 US 722, 750; 111 S Ct 2546; 115 LEd 2d 640 (1991). . . . . . . . . . . 5

*Couch v. Jabe,* 951 F2d 94, 96 (6th Cir., 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Duncan v Louisiana,* 391 US 145, 149 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fahy v Connecticut,* 375 US 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gideon v Wainright,* 372 US 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Giglio v United States,* 405 US 150; 31 L Ed 2d 104;
    92 S Ct 763 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Harris v. Stovall,* 212 F3d 940, 943 (6th Cir., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Joshua v. DeWitt,* 341 F3d 430, 447-448 (6th Cir., 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maples v. Stegall,* 340 F3d 433, 437 (6th Cir., 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mars v Bd. Of Medicine,* 422 Mich 688, 375 NW2d 321 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 8

*McKaskle v Wiggins,* 465 US 168 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mooney v. Holohan,* 294 US 103, 55 S Ct 3470 L Ed 791 (1935) . . . . . . . . . . . . . . . . . . . . . . . 12

*Napue v Illinois,* 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959) . . . . . . . . . . . . . . . . . 12, 13

*People v Cress,* 468 Mich 678; 664 NW2d 174 (2003) . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 12, 17

*People v Islam,* (Unpublished) No 257288, 12/6/2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v Moody,* unpublished opinion of 10/13/93 (Docket No.
144675, MLW # 10207) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v Robinson,* 368 Mich 551; 194 NW2d 709  (1972) . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*People v Swint,* 225 Mich 353 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v Weise,* 425 Mich 448 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Pyle v Kansas,* 317 US 213, 63 S Ct 177, 87 L Ed 214 (1942) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Simpson v. Sparkman*, 94 F3d 199, 202 (6th Cir., 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Spaf v United States,* 156 US 51, 105-106 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Spaulding v Spaulding,* 355 Mich 382, 94 NW2d 810 (1956) . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Sullivan v Louisiana,* 508 US 275 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Wiggins v. Smith*, 539 US 510; 123 S Ct 2527; 156 LEd 2d 471 (2003) . . . . . . . . . . . . . . . . . 5

*Williams v. Coyle*, 260 F3d 684, 693 (6th Cir., 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v Hofley Mfg. Co.,* 430 Mich 603, 424 NW2d 278 (1988) . . . . . . . . . . . . . . . . . . . . 8

*Williams v. Taylor*, 529 US 362, 405-406;  120 S Ct 1495; 146 LEd 2d 389 (2000 . . . . . . . . . . 5

## COURT RULES AND STATUTES

MCR 6.501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MCR 6.508(D)(3)iii . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

MCR 6.431(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MCLA 767.26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

MCLA 767.29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**MISCELLANEOUS**:

The Riddle of Harmless Error (Ohio State Univ Press ed 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATEMENT OF MATERIAL PROCEEDINGS AND FACTS

Defendant-appellant, Azizul Islam was convicted of first degree murder and mutilation of a body after a jury trial.

The proofs at trial were a series of circumstances that were not favorable to Dr. Islam, but which did not conclusively prove the accusation of murder. The only direct evidence linking Dr. Islam to his wife's disappearance and death came from Sandra Anderson, a dog handler and private contractor from Midland, Michigan who was hired by the Plymouth Michigan police department to help find evidence relating to the murder of Mrs. Islam.

Sandra Anderson, Director of the Canine Detection Services division, testified that she was a dog handler for the purpose of death investigation and body identification (T, Vol VI, pp134-135) She indicated that she received a call from the Plymouth Police Department, concerning the need of a canine, and was directed to the address of 302 Rose Street in the City of Plymouth. She testified that the canine went through the living room quickly and immediately went downstairs toward the basement (T, Vol VI, 150-151) She further indicated that the dog hit on several areas of the basement, including the area in front of the washer dryer area, a paint tray and a shop vac that was located under the stairs (T, Vol VI, pp 153- 154) She further indicated that the dog went into the bedroom on the ground floor and laid down and barked inside the closet (T, Vol VI, p 156). She claimed to have found a bloody saw blade in Dr. Islam's basement. That saw was not tested for Mrs. Islam's blood.

Prior to trial, the Trial Court had granted Defense counsel's motion to suppress any mention of the broken hack saw blade (T, 9/7/00), but deferred deciding the admissibility of a photograph and sketch depicting it until trial. Despite this order, the jury was exposed to significant and

-1-

repeated testimony concerning saws. Ms. Anderson referred to the saw blade several times, as did other witnesses called by the prosecution. During the testimony of Heather Spillane there was substantial testimony involving evidence taken from saws (T 9/28/00, pp25-33). Notwithstanding the Trial Court's Order, the prosecutor asked Heather Spillane about the saw:

> Q:     Now, was there a broken saw blade found somewhere?
> A:     Behind the dryer we observed a broken fragment of a hacksaw blade, steel blade.(T, 9/28/00. p 48)

This was not an isolated reference to saws. Despite the trial court's ruling, Heather Spillane testified about saws on two separate days. (T, 9/27/00, p 148;  9/28/00, pp. 24,25,48). Another prosecution witness, Steven Symes, whose entire testimony, consisted of 37 pages, referred to nothing but saws. Mr. Symes testified that he received some evidence from Dr. Frank Saul which consisted of some bones for the purpose of determining the type of tools that was used to dismember the body (T, Vol VII, pp 132-133). He indicated that in his opinion he felt the tool used was a straight blade saw with alternating sets of teeth, and that the tool was hand powered (T, Vol VII, pp 135-165). Cheryl Lowe, M.D. testified regarding a saw (T, 9/21/00, p. 18). Lt Carroll testified concerning saws (T, 9/26/00, pp 34,36,37,38)

Prior to submitting the case to the jury, the Trial Court observed that this was "a very circumstantial case". (T., 9/28/00, p 11) Following closing arguments and instructions, the jury convicted the Defendant as charged (T, Vol XIV p 3-4) At sentencing the Court imposed a sentence of mandatory life imprisonment and 4 to 10 years on the mutilation of a body (S, p 11) The Court of Appeals affirmed the Defendant's conviction and sentence. The Michigan Supreme Court denied leave to appeal.

Defendant timely filed a Motion for New Trial, which was properly treated by the trial court

-2-

as a Motion For Relief From Judgment.

Part of Dr. Islam's request for relief was grounded in the perjury and false evidence submitted to the jury through Sandra Anderson. Because Sandra Anderson had federal perjury charges relating to this case pending at the time of the hearing, she was not called as a witness during the motion hearing. The prosecution did not contest that Sandra Anderson was left alone in the basement of Defendant's house where she planted the bloody saw blade. No one knew what else she planted there. This was significant because there was also evidence introduced that blood was found in the basement which could not be assessed as being human, fresh, or coming from a body or transferred indirectly from a piece of cloth (T, 9/28/00, 71, 72, 92, 93). After full briefing and a lengthy hearing on, March 9, 2004, the Trial Court granted Defendant-appellant a new trial on July 29, 2004. (See appendix)

The prosecution appealed. The Michigan Court of Appeals reversed the Trial Court's grant of a new trial. Unpublished Opinion, December 6, 2005, 2005 WL 3304105. (see appendix). The Court of Appeals substituted its own view of the testimony for that of the trial court, and concluded that the trial court made a clear error of fact when it held that the perjured testimony had corrupted the trial process and deprived Dr. Islam of a fair trial. The Court of Appeals held that because the prosecutor had not referred to the planted testimony in its opening, closing or rebuttal arguments, the prosecution had not relied on the perjured testimony. Lastly, the Court of Appeals found that because one of the witnesses mentioned that the fatal wounds may have been caused by a "dovetail" saw, the jury could not have been mislead by the perjured testimony because the planted saw blade was a "hacksaw" blade. The Court did not explain how the jury would have known the difference between the two types of blades, or why the trial court was clearly wrong when she decided that the

-3-

different kinds of blades would have amounted to a difference without a distinction.

## I.

### THE MICHIGAN COURT OF APPEALS MADE UNREASONABLE INTERPRETATIONS OF FACT WHEN IT SUBSTITUTED ITS VIEW OF THE EVIDENCE FOR THAT OF THE TRIAL COURT.

**A.     Exhaustion**

Petitioner exhausted these claims by defending them in the prosecution appeal from the trial court's grant of the 6.500 motion and his application for leave to appeal from the Court of Appeals' opinion reversing the trial court's order.

**B.     Merits**

Petitioner's Application is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 USC §2254(d).  The AEDPA provides that a federal court may not grant a writ of habeas corpus with respect to a state court judgment unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

28 USC §2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

-4-

indistinguishable facts. *Williams v. Taylor*, 529 US 362, 405-406;  120 S Ct 1495; 146 LEd 2d 389 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id* at 410-411.

When the state courts have not addressed the merits of a federal claim, the federal court addresses the questions of law and fact *de novo*. *Maples v. Stegall*, 340 F3d 433, 437 (6th Cir., 2003), citing *Wiggins v. Smith*, 539 US 510; 123 S Ct 2527; 156 LEd 2d 471 (2003).

Where a state court, although deciding a claim, does not offer some explanation of its decision, a federal court must conduct an independent review of the state court's decision.  This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F3d 940, 943 (6th Cir., 2000).  But any independent review must be deferential to the state court's decision and cannot amount to a full *de novo* review of the claims. *Joshua v. DeWitt*, 341 F3d 430, 447-448 (6th Cir., 2003), quoting *Harris*, 212 F3d at 943.

If a state court determines a prisoner has defaulted his federal claim pursuant to an independent and adequate state procedural rule, the federal court may not review the claim unless the prisoner can demonstrate cause for the default and prejudice because of it, or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 US 722, 750; 111 S Ct 2546; 115 LEd 2d 640 (1991).

A state procedural rule is an "adequate" state ground if it is firmly established and regularly followed at the time it is applied. *Williams v. Coyle*, 260 F3d 684, 693 (6th Cir., 2001). A state procedural rule is an "independent" ground which bars habeas review if the state court actually relied on the rule in its review. *Simpson v. Sparkman*, 94 F3d 199, 202 (6th Cir., 1996). Whether a petitioner's federal habeas claim is foreclosed because of a state procedural default is a question of law viewed by the federal court *de novo*. *Couch v. Jabe*, 951 F2d 94, 96 (6th Cir., 1991).

This case involves preserved Constitutional error, involving a "structural" defect in the proceedings. The Court of Appeals did not specifically address that issue, but used a much different standard and held that the motion in this case should have been reviewed under the newly discovered evidence standard announced in *People v Cress*, 468 Mich 678; 664 NW2d 174 (2003), rather than MCR 6.508 (D) (3) iii, which provides, in the part relied upon by the Trial Court:

> "...or, in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;"

**C.    The Trial Court Used the Correct Standard**

The Court of Appeals held that the rule for granting a new trial on the basis of newly discovered evidence was proper standard of review because MCR 6.508(D)(3) did not apply. This is clearly erroneous. There is no other way for a defendant, in post-conviction proceedings to raise such an issue of Constitutional magnitude. Clearly it was too late to file a motion for new trial. MCR 6.431(A)(1) provides that a Motion for New trial must be filed within 42 days of judgment. MCR 6.431 (A)(4) or by leave, the defendant may seek relief pursuant to the procedures set forth in subchapter 6.500(emphasis added). Chapter MCR 6.500 is the only avenue for filing a post appeal

issue asking for a new trial, and the Trial Court treated Defendant's Motion for New Trial as for one

pursuant to MCR 6.500, which provides at MCR 6.501:

> "Unless otherwise specified in these rules, a judgment of conviction and sentence
> entered by the circuit court or the Recorder's Court for the City of Detroit not subject
> to appellate review under chapters 7.200 or 7.300 may be reviewed only in
> accordance with the provisions of this chapter."(emphasis added)

The Court of Appeals clearly erred in referring to only a part of MCR 6.508(3), MCR 6.508

(3) (a), and ignoring section (b)(iii). That is exactly the provision the Trial Court relied on in her

decision. The court rules are clear and unambiguous on this point. The Court of Appeals indicated

that the Opinion of the trial Court was "well reasoned". Therefore there was no reason to disregard

that opinion.

Defendant has no other remedy post conviction. It would have been an abuse of discretion

had the Trial Court ignored Chapter MCR 6.500.

### Abuse of Discretion Standard

The Trial Court did not abuse its discretion in any manner of form. The standard for an abuse of

discretion is as follows:

> "Where the exercise of discretion turns upon a factual determination made by the
> trier of fact, an abuse of discretion involves far more than a difference of judicial
> opinion between the trial and appellate courts. The term discretion itself involves the
> idea of choice, of an exercise of will, of a determination made between competing
> considerations. In order to have an abuse in reaching such determination, the result
> must  so palpably and grossly violative of fact and logic that it evidences not the
> exercise of free will but perversity of will, not the exercise of judgment but defiance
> thereof, not the exercise of reason but rather of passion or bias." *Spaulding v
> Spaulding,  355 Mich 382, 94 NW2d 810 (1959)*

This Court has said concerning a trial court's granting of denying a new trial: Appellate

reluctance to interfere with the grant of a new trial is soundly rooted in the proposition that "[t]he

judge was 'there' [we] were not." *Adler v Flint City Coach Lines, Inc.,* 364 Mich, 29, 110 NW2d 606

(1961) It is also based on the pragmatic expectation of appellate courts that the trial courts will sparingly exercise such authority and that expansion of appellate oversight would simply invite an increase in claims for review, *Spaulding,* infra

This Court has said:

> "An abuse of discretion involves far more than a difference in judicial opinion. *Williams v Hofley MFG. Co.,* 430 Mich 603, 424 NW2d 278 (1988). It has been said that such abuse occurs only when the result is"so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Marrs v Bd. Of Medicine,* 422 Mich 688, 375 NW2d 321 (1985)………..This Court historically has cautioned appellate courts not to substitute their judgment in matters falling within the discretion of the trial court, and has insisted upon deference to the trial court in such matters. It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and unless it turns out that he has not merely mis-stepped, but has departed widely and injuriously, an appellate court will not reexamine. It will not do it when there is no better reason than its own opinion that the course actually was not as wise or sensible or orderly as another would have taken.

> To warrant this Court interfering in matters so entirely in the sound discretion of the circuit court as the granting or refusing of a new trial, the abuse of discretion ought to be so pain that, upon consideration of the facts upon which the court acted, an unprejudiced person can say that there was no justification or excuse for the ruling made. *Alken-Ziegler v Waterbury Headers Corp.,* 461 Mich 219, 600 NW2d 638(1999).

It cannot be said in any way that the trial court's "well reasoned[1]" decision in this case abused her discretion. The Court of Appeals clearly erred in referring to only a part of MCR 6.508(3). MCR 6.508 (3) (a), and ignoring section (b)(iii). That is exactly the provision the Trial Court relied on in her decision. The court rules are clear and unambiguous on this point. The Court of Appeals indicated that the Opinion of the trial Court was "well reasoned". Defendant has no

---

[1]The Michigan Court of Appeals found that the trial court's decision was "well reasoned."

other remedy post conviction.  It would have been an abuse of discretion had the Trial Court ignored

Chapter MCR 6.500. The Trial Court did not abuse its discretion in any manner or form.

**D.    The Trial Court Reached the Correct Decision in Granting a New Trial**

The Trial Court was in the best position to observe what happened at trial. She knew she had

to give cautionary jury instructions every time the Prosecutor injected saws and saw blades into the

trial. In her "well reasoned" opinion, the Trial Court stated, relying upon *People v Weise, 425 Mich*

*448 (1986)*:

> "…Further, it may be confidently concluded that a death investigation expert whose
> dog finds not only blood, but a bloody saw blade, in Defendant's basement is as
> inflammatory and persuasive as evidence can get in a murder trial. Expert testimony
> regarding the finding of a broken bloody saw blade as well as expert testimony
> supporting the consistency of such a weapon with the dismembering of a body in this
> case was presented and argued by a prosecution team wholly unaware of its false
> nature. This evidence was particularly inflammatory and persuasive and cannot be
> regarded as harmless. Hence, both the remaining prongs have been satisfied. One
> affirmative finding would have been sufficient to find that the error was offensive to
> the maintenance of a sound judicial process. Opinion

At the hearing on Defendants Motion for New Trial, the Trial Court was very expressive as to what

she had observed at trial:

> "…Its mentioned that Heather Spillane mentioned the saw blade. Heather Spillane
> verbally brought it into evidence. And it wasn't just a mention. The Prosecutor
> specifically said so then there was a piece of broken saw blade found behind the
> washer. The Prosecutor asked the question and once that was brought in, although
> the blood wasn't mentioned, that there was blood on it, the saw blade and the issue
> of the saw blade ran throughout this trial**.** (emphasis added) And you mentioned that
> blood was found in different areas, but the evidence in this actual trial was that the
> blood that matched the victim was found in area No. 1; approximately a two foot
> area under some paint. And so we are left to wonder. There is no evidence that
> Sandra Anderson planted all the blood, but there is solid evidence that she planted
> blood on a broken saw blade in the back of the washer. So the jury, who could think
> that because Sandra Anderson testified that there was the smell of bleach all over,
> and that could effect the findings, the chemical findings of blood, could be left with
> a solid impression that was the reason that Heather Spillane couldn't come up with
> DNA evidence to prove that all of the rest of the blood other than area No. 1---That's

the reason that Heather Spillane could not come up with that proof that belonged to the victim. Now, there is no proof that it didn't. But there is no proof that it did. And there is no proof that Sandra Sanderson didn't plant other evidence. There is no proof that she did. The jury just didn't get to hear that. And what they did hear was this court attempting to be cautious, given the circumstances; and so…………However, there was an argument all the way through that the saws, including that broken saw, were of great relevance to the case by the prosecution. ………………..That leaves a great concern in this court's mind about the entire issue. And I do feel that it is upon Defense Attorney to file the proper motion, motion for relief from judgment……….In my tenure on the bench I have not seen such a case that is so deserving of the time and effort that should be put in here…." T., pp 20-26

The out-of-hand dismissal of these findings by the Court of Appeals was unwarranted. The Court of Appeals did not explain why its decision on the evidence was the only logical one. It merely provided an alternative theory which the trial court might have adopted if it thought it was appropriate. It was not that the Court of Appeals acknowledged that the trial court's decision was "well reasoned" The decision was based upon that facts in the record and the trial court's appraisal of the impact of the false testimony and planted evidence on the jury. The trial court did not abuse her discretion.

## II.

### THE COURT OF APPEALS CLEARLY ERRED IGNORING SUBSTANTIAL FEDERAL CONSTITUTIONAL GUARANTEES OF FAIR TRIAL

#### A.    Exhaustion

Petitioner exhausted these claims by defending them in the prosecution appeal from the trial court's grant of the 6.500 motion and his application for leave to appeal from the Court of Appeals' opinion reversing the trial court's order.

#### B.    Merits

The Court of Appeal's ruling ignores completely any constitutional challenge regarding

-10-

agents of the prosecution planting evidence and committing perjury in order to get a conviction.

Nowhere in *People v Cress, 468 Mich 678; 664 NW2d 174 (2003)*, or the Opinion of the Court of

Appeals is there any mention of the federal Constitution, federal cases, or the federal guarantees of

a fair trial, which underlay the trial court's decision to grant a new trial.

An FBI  investigation of Ms. Sandra Anderson, (the prosecutor's chief trial witness) that

Sandra Anderson had been indicted in Federal Court alleging giving false testimony and planting

false evidence in this case, as well as others. Later, she pleaded guilty to planting evidence in this

case and others and was sentenced to 21 months in Federal prison.  Sandra Anderson, was the chief

prosecution witness against Defendant. She was the handler of the cadaver dog hired by the

Plymouth Police Department to search Defendant's home for evidence of Tracy Islam's killing.  At

the trial, the court opined the case was very circumstantial, even with the testimony of Ms. Anderson

(citation).  The subsequent revelation that Ms. Anderson planted evidence and lied about it, and

mentioned it  several times at trial[2], combined with the rest of the evidence, made it clear that Dr.

Islam's fundament right to a fair trial had been violated.  The trial court recognized this in her

comments from the bench and her opinion. The introduction of false and planted evidence  requires

a much more critical evaluation than the four prong test for motions for new trial based on newly

discovered evidence.  *People v Cress,* 468 Mich 678, 664 NW2d 174 (2003).

Nowhere in *Cress,* or the Court of Appeals decision,  is there any analysis of any deprivations of

---

[2]The Court of Appeals incorrectly held ". . . Anderson never testified about this broken

hacksaw blade.**"** *People v. Islam* (Unpublished), No. 257288, Dec. 6, 2005 p2 (Gage,
concurring)  Not only did Sandra Anderson testify about the saw blade several times, Dr. Steven
Symes testified that a saw blade was used to cut up the deceased.  The testimony of Heather
Spillane also injected the saw blade into the case.

Defendant's  Federal constitutional rights, nor is there a single mention of a single federal case.

Such conduct (False evidence) has long been recognized as a violation of a Defendant's state and federal constitutional rights to due process. In Michigan the review of a trial court's determination of a constitutional question is *de novo.  People v Swint*, 225 Mich 353 (1997).

The standard and analysis of a violation of preserved federal constitutional law is an issue of federal constitutional law.  *Giglio v United States*, 405 US 150; 31 L Ed 2d 104; 92 S Ct 763 (1972).

The federal courts review cases such as this under an analysis of whether a defendant has had his rights of due process violated. This has been the rule for many decades, perhaps more.

> "As long ago as *Mooney v Holohan,* 294 U S 103, 55 S Ct 340, 79 L Ed 791 (1935), this court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle v Kansas*, 317 U S 213, 63 S Ct 177, 87 L Ed 214 (1942). In *Napue v Illinois,* 360 U. S. 264, 79 S. Ct. 1173, 3 L Ed2d 1217 (1959), we said, 'the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. Id., at 269, 79 S Ct ., at 1177. Thereafter *Brady v Maryland*, 373 U S., at 87, 83 S. Ct. at 1197, held that suppression of material evidence justifies a new trial 'irrespective of the good faith of bad faith of the prosecution.' See American Bar association, Project on Standards for Criminal Standards for Criminal Justice, Prosecution Function and the Defense Function s 3.11 (a)" *Giglio v United  States,* infra., at 766

> "It is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the fourteenth Amendment, (citations above) The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. *Akcirta v State of Texas*, 355 U S 28, 78 S Ct 103, 2 L Ed2d 9…citations omitted………………It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. That the District attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair". *Napue v Illinois,* 369 U S 264, 79 S Ct 1173, 3 L Ed2d 1217 (1959)

-12-

A defendant's constitutional right to due process is violated when the prosecution permits a witness to testify to facts it knows or should know are false. *People v Weise*, 425 Mich 448 (1986); *Napue v Illinois*, 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959).   As stated succinctly by Judge (now Justice) Maura Corrigan in her concurrence in *People v Moody*, unpublished opinion of 10/13/93 (docket 144675, MLW # 10207)(see attached opinion):

> "The prosecution as an entity (including police agencies), has an obligation not to allow the jury to be deceived by false testimony of prosecution witnesses.  Included in the entity's obligation is the duty not to allow known false testimony, or testimony it should have known to be false to stand uncorrected.  If this obligation is not fulfilled, we need not decide whether the prosecution was negligent or intentionally acted deceptively, See, generally, LaFave and Israel, Criminal Procedure, (2d ed), p 1024." (Moody concurrence at 2).

The prosecution in this case admitted the false testimony and planted evidence. Violations of this constitutional duty by the prosecution dictate reversal if the "false testimony could ...in any reasonable likelihood have affected the judgment of the jury."

In *People v Weise*,  425 Mich 448, 454 (1986), this Court listed Michigan and federal courts holding that this rule dictated reversal even where the false testimony went only to the credibility of a prosecution witness.   In this case the error was manifestly prejudicial.

Stripped to its essence, the Court of Appeal's ruling consisted of striking the admittedly false testimony of the agent of police from the record and then deciding that the remaining evidence was sufficient to support the verdict.

Federal case law demonstrates that the uncontested constitutional error in this case was not harmless. Reversible error is uniformly found even where the false testimony goes only to the credibility of the prosecution's star witness. *Giglio v United States*, 405 US 150; 31 L Ed 2d 104; 92 S Ct 763 (1972).   In this case the error both undermined the credibility of the prosecution's star

witness, provided false direct evidence of guilt, and mentioned and testified about planted evidence.

The proper exercise of this Court's supervisory powers likewise dictates a concern for the maintenance of a sound judicial system. In *People v Robinson*, 368 Mich 551, 562; 194 NW2d 709 (1972), the Court reversed a first degree murder conviction on the basis of a prosecutor's intentional injection of inadmissible evidence of another offense.  In that opinion the court quoted California Chief Justice Traynor, in his book *The Riddle of Harmless Error* (Ohio State Univ Press ed 1970), p 17:

> "A large word like justice incorporated into a rule governing harmless error, compels an appellate court to concern itself not alone with a particular result but also with the very integrity of the judicial process."

*People v Robinson*, 368 Mich 551, 562; 194  NW2d  709 (1972).

The failure of the Court of Appeals to write a word of criticism in responding to the misconduct at trial is as disturbing as the misconduct itself.  It is bad enough that criminal defendants and the public sometimes know personally that the police and prosecution have used false evidence.  But if the courts respond with indifference in the few cases where it can be proven, it is understandable that they feel victimized by a corrupt system.   Such indifference erodes the whole community's confidence and respect for the courts.  This Court cannot sustain a jury verdict founded in whole or in any small part, on planted evidence, and perjury.  Defendant-appellant thinks not.

The United States Supreme Court finds the prosecution's use of false testimony to be "incompatible with rudimentary demands of justice" *Giglio* at  153.   The present case calls upon this Court not only to assure the federal constitutional rights of criminal defendants, but also fulfill its Michigan constitutional duty to maintain a sound judicial system.

-14-

**C.    Some  History of "Harmless Error and Automatic Reversal"**

Defendant maintains that the use of planted evidence and perjury, invokes a defendant's rights too his 5th, 6th, and 14th Amendment rights to a fair trial, among others. Defendant maintains that the error in this case, where at trial it was not known that the evidence was planted, and the testimony false, involves his right to counsel and confrontation because his attorney did not know in order to effectively cross examination the witness. Defendant maintains that the constitutional violation is of the highest level, and of the sort where harmless error cannot be effectively made, or applied, and of the sort of automatic reversal.

Harmless error has been one of the judicial review processes for decades.  Most states have passed statutes regarding standards of review. Most, including Michigan, provide that a jury verdict may not be set aside unless there is a "manifest injustice".M.C.L.A.767.29, and M.C.L.A. 767. 26. What distinguishes a harmless error standard of review from automatic reversal is a case involving preserved constitutional error of a structural nature. The later kind of case is extremely rare in the appellate world. It should be solid case law and precedent by this time, but preserved constitutional error involving a structural defect is reviewable upon whether the error is harmless beyond a reasonable doubt, and that the prosecutor must shoulder the burden of persuasion. *Chapman v California,* 386 U S 18, 87 S Ct 824, 17 L Ed. 2d. 705, 24 A.L.R 3d 1065 (1967); *People v Robinson,* 386 Mich 551; 104 NW2d 709 (1972) Gillispie*,* Michigan Criminal Law and Procedure, sec 24.18.  However, if the error is of a structural nature, it is not reviewable, as the case is not capable of harmless error analysis, and, therefore, one of automatic reversal.

One example of Michigan's perhaps overutilization of the harmless standard is contained in *Barker v Yukins***,** 199 F3d 867, 1999, Fed App 0416P (1999). The 6th Circuit reversed a Michigan

-15-

conviction because of the trial court's failure to offer a self defense instruction. The Court criticized the Michigan Court's harmless error analysis. The U S Supreme Court has often criticized state court and lower federal court's use of the harmless error analysis.  The Michigan Court  had ruled that the failure of the jury instruction was harmless because no jury would ever believe Defendant anyway. The 6th Circuit held that the Michigan Court improperly invaded the province of the jury, and found a violation of the 6th Amendment in :"..the Supreme Court has recognized, the Sixth Amendment protects the defendant's right to trial by an impartial jury trial, which includes as its most important element, the right to have the jury rather than a judge, reach the requisite finding of 'guilty'. *Barker, supra.*

In 1967, the U S Supreme Court decided *Chapman,* infra, institutionalizing the "harmless error" test for constitutional errors. It held that while not all convictions where a constitutional violation occurred had to be automatically reversed, there are some rights so basic to our society that any error concerning them will never be considered "harmless". The Court later explained in *Sullivan, infra*., that such rights as counsel, *Gideon v Wainright,*372 U S 335 (1963); *Tumey v Ohio*, 273 U S 510 (1927) trial by a biased judge *McKaskle v Wiggins,* 465 U S 168 (1984); right to self-representation, are just a few of those special constitutional, whose violation result in automatic reversal.

The *Chapman* Court indicated that, like the state and federal statutes, it emphasized an intention not to apply harmless error to  those constitutional errors that "affect substantial rights". The *Chapman* Court indicated it was going a step further than it had in *Fahy v Connecticut*, 375 US 85, where it held that "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction and requiring the beneficiary of the constitutional error to

-16-

prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Chapman* held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

The Michigan Court of Appeals use of only the standard of *Cress*, ignored well established Federal Constitutional principles and illegally shift the appellate burden of proof to the Defendant to prove, that, "but for" the evidence complained of, a different result would have happened.  Even had the Court of Appeals utilized a harmless error standard, the prosecutor still would have had to convince the Court beyond a reasonable doubt that the complained of error did not contribute to the outcome beyond a reasonable doubt.

Five years after *Chapman*, the Michigan Supreme Court decided *People v Robinson*, infra.  In Robinson, this Court stated:

> "Where it is claimed that error is harmless, two enquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt  386 Mich, at 563

One of the problems of analyzing an appellate case under the harmless error standard is denying a defendant his right to a fair trial, and his right to a impartial jury as opposed to a judge decided trial.

> "The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury….' In *Duncan v Louisiana***,** 391 U S 145, 149 (1968), we found this right to trial in serious criminal cases to be 'fundamental to the American scheme of justice,' and therefore applicable in the state proceedings. The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of guilty.' See *Spaf v United States,* 156 U S 51, 105-106, (1895) Thus, although a judge may direct a verdict for the Defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State no matter how overwhelming the evidence. Ibid………………………citations omitted………………The sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty. See

-17-

*Bollenbach v United States,* 326 U S 607, 614 (1946) *Sullivan v Lousiana,* 508 U S 275 (1993)

Utilizing the proper standard of review, it matters not how much other evidence there was, or whether it was circumstantial or direct. (Id). The Court of Appeals' holding that the "other" evidence was sufficient, i.e. the evidence other than the planted evidence and the perjured testimony of Sandra Anderson, is clearly an incorrect application of federal law and an unreasonable interpretation of the facts. Utilizing the proper standard of review, the trial court was correct and the verdict should be set aside. (Id)

Dr. Islam is entitled to a new trial free from evidence fabricated by a governmental agent and reinforced and relied upon by other government witnesses.

## CONCLUSION AND RELIEF SOUGHT

Evidence throughout the trial, from several witnesses, made reference to saw blades and a bloody saw blade.  In light of the fact that Sandra Anderson planted evidence, including a bloody saw blade, raises other issues that should be addressed at trial because the prosecution expert on blood could not identify blood found at the scene as even human blood, or how old it was. The several curative instructions may have made no impact on the jury. Petitioner clearly had a right to an impartial jury trial, untainted by false and planted evidence. False evidence raises many guaranteed federal constitutional rights that were violated in this case.

Petitioner requests that this Honorable Court grant his request for a Writ of Habeas Corpus, vacate his conviction and his immediate release from custody.

Respectfully submitted,

_____
WILLIAM W. SWOR (P21215)
Attorney for Petitioner
645 Griswold, Suite 3060
Detroit, Michigan 48226
(313) 967-0200

Dated: April 14, 2008