UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AZIZUL ISLAM,

        Petitioner,

v.                                                      Case Number: 08-CV-11592
                                                       Honorable Anna Diggs Taylor

RAYMOND BOOKER,

        Respondent.
_____/

## OPINION AND ORDER
## (1) GRANTING RESPONDENT'S MOTION TO DISMISS THEREBY DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND (2) DECLINING TO ISSUE PETITIONER A CERTIFICATE OF APPEALABILITY AND AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

        Petitioner Azizul Islam, a state inmate currently incarcerated at the Ryan Correctional Facility in Detroit, Michigan, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Respondent did not file an answer but rather filed a motion to dismiss, arguing that Petitioner's petition was not timely filed under 28 U.S.C. § 2244(d)(1). Petitioner had forty-five days from Respondent's filing, or until November 21, 2008, in which to file a response to Respondent's motion. The Court, *sua sponte*, extended Petitioner's time for a response by approximately two weeks. To date, Petitioner has not filed a response to Respondent's motion.

        For the reasons stated below, the Court grants Respondent's motion to dismiss, thereby dismissing Petitioner's petition. The Court also declines to issue Petitioner a certificate of appealability and an application for leave to proceed on appeal *in forma pauperis*.

# I. BACKGROUND

## A. Substantive Facts

This case arises from the death of Petitioner's wife, Tracy Islam. Ms. Islam left Petitioner and their two teenage children in August 1999, and returned to her native home of England. While she was in England, she began a relationship with another man, Noel Fiennegan. In December 1999, she returned to Plymouth, Michigan, to see her children and finalize the divorce. After Ms. Islam signed a quitclaim deed for the family home and a paper indicating that she would not contest the divorce, she was not seen again. Her arms and legs were found in a grease dumpster in Dearborn, Michigan, on December 22, 1999, and her torso was found in a field in Ohio nine days later. Her head has never been found. Testimony at trial revealed the following.

On December 18, 1999, Ms. Islam called Mr. Fiennegan in England and told him that she was frightened and afraid that Petitioner was going to poison her. On December 19, 1999, she spoke with her sister, Anita Ross, and reiterated her fear that Petitioner was going to poison her. Also on that same date, while Ms. Islam was speaking with Mr. Fiennegan on the telephone, Petitioner interrupted the conversation, yelled obscenities at Fiennegan, which in turn ended the phone call. Later that day, Ms. Islam spoke with Mr. Fiennegan again, and informed him that she planned to meet with her attorney and would try to get an earlier flight to London. Mr. Fiennegan testified that he never heard from Ms. Islam again.

Petitioner testified that on December 20, 1999, he went to run errands and when he returned, his wife was gone.

On December 22, 1999, employees of an A & W restaurant in Dearborn found garbage bags in a dumpster that normally contained only grease. After examining the bags, they discovered that

one of them contained severed human limbs. The bags contained a pair of arms, cut off just below the elbow, and a pair of legs, cut off above the knee. The fingertips were missing on both hands.

Testimony also revealed that on December 23, 1999, Petitioner rented a minivan for the day. Petitioner's neighbor testified that at approximately 11:00 a.m., on December 23, 1999, Petitioner asked his neighbor to help him place a plastic Rubbermaid garbage can from his garage into a white minivan that had a plastic sheet covering the back seat and floor. At approximately 2:00 p.m., on December 23, 1999, a couple testified that they saw a light-colored, or white, minivan parked near Walbridge Road in Toledo, Ohio, and a person of Middle-Eastern descent standing near the van.

Petitioner returned the minivan later in the afternoon on December 23, 1999. The van had been driven two-hundred-and-thirteen miles. Petitioner told the car-rental company that he needed the van to pick up relatives from the airport.

On December 31, 1999, a human torso was discovered near Walbridge Road in Curtice, Ohio. The torso was found in a field wrapped in a number of layers of plastic bags and tied with rope. The limbs had been severed from the torso and the head had been removed. The parties stipulated that the limbs found in the dumpster matched the torso found in Ohio. Both the medical examiner and the coroner found multiple gray-paint particles on the limbs and on the torso.

On January 4, 2000, while interviewing Petitioner at his home, a police officer noticed that a portion of the basement floor had been freshly painted and a roller and roller pan were sitting on the floor. On January 7, 2000, the police brought a death-investigation dog into the home. The dog ran into the basement and signaled that it had located human remains in the washer and dryer area of the room, in the paint tray, on the roller, and on a mop. The paint was removed from the newly-painted area and the police discovered blood stains underneath.

An evidence analyst compared the gray-paint samples taken from the limbs and the torso with those taken from Petitioner's basement floor, which demonstrated that they had a consistent chemical composition. The evidence technician also indicated that a piece of beige paint, found in one of the garbage bags containing the torso, matched paint found in Petitioner's roller pan.

### B. Procedural Facts

On October 3, 2000, Petitioner was convicted of first-degree murder[1] and mutilation[2] of a body, by a Wayne County, Michigan, Circuit Court jury. Petitioner was sentenced to concurrent terms of life imprisonment without the possibility of parole for the first-degree-murder conviction and four-to-ten-years imprisonment for the mutilation-of-a-body conviction.

Subsequently, Petitioner, through counsel, filed his appeal of right in the Michigan Court of Appeals, raising the following claims: (1) a *Batson*[3] violation, (2) evidentiary errors, (3) instructional errors, (3) prosecutorial misconduct, and (4) cruel and unusual punishment. Following, the Michigan Court of Appeals issued an opinion affirming Petitioner's convictions and sentences. *People v. Islam*, No. 231264, 2002 WL 31953880 (Mich.Ct.App. Dec. 13, 2002) (unpublished). Petitioner's motion for reconsideration was also denied. *People v. Islam*, No. 231264, 2002 WL 31953880 (Mich.Ct.App. Jan. 28, 2003).

Following, Petitioner filed an application for leave to appeal from that decision with the Michigan Supreme Court, raising the same claims as raised in the court of appeals. The Michigan

---

[1] MICH. COMP. LAWS § 750.316A.

[2] MICH. COMP. LAWS § 750.160.

[3] *Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986) (the exercise of racially discriminatory peremptory challenges offends the Equal Protection Clause if they are made by the state, including challenges that would exclude jurors of a race other than the defendant's own race).

Supreme Court denied Petitioner's application on July 28, 2003. *People v. Islam*, 469 Mich. 861, 666 N.W.2d 671 (2003).

Then, on January 9, 2004, Petitioner filed a motion for a new trial in the circuit court, raising a claim of newly-discovered evidence predicated on evidence that Sandra Anderson, the handler of a death-investigation dog, had planted a bloody hacksaw blade in the basement of Petitioner's home. The People filed a brief in response, arguing that the court rules precluded Petitioner from filing a motion for a new trial after he exhausted his direct appeal and, even if his motion was considered a motion for relief from judgment, Petitioner had failed to establish his entitlement to relief because it was not probable that the newly-discovered evidence would have led to a different result on retrial.

The circuit court heard oral argument on Petitioner's motion. At the conclusion of that hearing, the trial court directed Petitioner to file a properly labeled motion for relief from judgment and ordered both parties to submit supplemental briefing addressing Petitioner's claims under the standards set forth in M.C.R. 6.500 *et. seq*.

Then, on July 29, 2004, the circuit court issued an opinion and order granting Petitioner's motion, concluding that Petitioner had failed to show actual prejudice such that there was a reasonably likelihood of acquittal. However, it determined that the new evidence presented was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand. *People v. Islam*, No. 00-002335 (Wayne County Circuit Court, July 29, 2004).

Subsequently, the People filed an application for leave to appeal that decision with the Michigan Court of Appeals. The court of appeals granted the application and stayed the circuit court's proceedings pending the disposition of the appeal.

On December 6, 2005, the Michigan Court of Appeals reversed the circuit court's decision and reinstated Petitioner's convictions. *People v. Islam*, No. 257288, 2005 WL 3304105 (Mich.Ct.App. Dec. 6, 2005).

On January 31, 2006, Petitioner then filed an application for leave to appeal that decision with the Michigan Court of Appeals, raising the following claims:

> I. Did the Court of Appeals err in substituting its judgment on the facts for that of the trial court and reversing the decision of the trial court?
>
> II. Did the trial court correctly decide that relief from judgment was appropriate?
>
> III. Did the prosecutor violate [Petitioner's] 14th Amendment rights to a fair trial in filing the instant appeal?

On April 13, 2007, the Michigan Supreme Court denied Petitioner's application "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Islam*, 477 Mich. 1104, 729 N.W.2d 506 (2007) (Markman, J., concurring).

Following, on April 14, 2008, Petitioner filed a petition for a writ of habeas corpus in this Court, raising the following claims:

> I. The Michigan Court of Appeals made unreasonable interpretations of fact when it substituted its view of the evidence for that of the trial court.
> II. The Court of Appeals clearly erred in ignoring substantial federal constitutional guarantees of fair trial.

## II. STANDARD

In his motion to dismiss, Respondent argues that Petitioner's petition should be dismissed as untimely. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the Act's effective date,

April 24, 1996, and imposes a one-year limitations period for habeas-corpus petitions. 28 U.S.C. § 2244(d)(1). Petitioner's application for habeas-corpus relief was filed after April 24, 1996, and thus, the provisions of the AEDPA, including the limitations period for filing an application for habeas-corpus relief, apply to Petitioner's application. *Lindh v. Murphy*, 521 U.S. 320, 337 (1997).

Title 28 of the United States Code, sections 2244(d)(1)(A) through (D) state in pertinent part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. §§ 2244(d)(1)(A)-(D). Concerning § 2244(d)(1)(A) and a direct appeal from state court, the one-year statute of limitations does not begin to run until the day after the petition for a writ of certiorari was due in the Supreme Court. *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000). Under Rule 13 of the Supreme Court Rules, a petition for a writ of certiorari "is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment." SUP.CT.R.13.

Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending tolls

any period of limitation contained in the statute. A post-conviction relief petition is "properly filed" under the statute if it meets the applicable state rules governing filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). However, tolling is effective only when collateral review is properly sought within the limitations period. *Id.*

Concerning a petition for state post-conviction relief, the one-year statute of limitations is tolled during the time period between the state appellate court's decision and the state supreme court's decision concerning the petition. *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Matthews v. Abramajtys*, 319 F.3d 780, 787-88 (6th Cir. 2003). However, a properly filed application for state post-conviction relief, while tolling the statute of limitations, does not start a new limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

### III.  DISCUSSION

#### A.  Timeliness of Petition

In this case, Petitioner did not file his application for a writ of habeas corpus within the statute of limitations. Petitioner's application for leave to appeal to the Michigan Supreme Court was denied on July 28, 2003. Petitioner then had ninety days from that order, or until October 29, 2003, in which to seek a writ of certiorari with the United States Supreme Court. SUP.CT.R. 13. Thus, for statute of limitations purposes, Petitioner's conviction became final on or about October 29, 2003. The limitations period commenced the following day, October 30, 2003, and continued to run uninterrupted until it expired on October 30, 2004. Accordingly, Petitioner was required to file his habeas petition on or before October 30, 2004, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244 (d)(2).

Indeed, Petitioner filed a post-conviction motion in state court, seeking relief from judgment, on January 9, 2004, two-hundred-and-ninety days before the limitations period for his habeas relief expired. Because the filing of the motion tolled the statute of limitations period, rather than starting it anew, Petitioner thus had two-hundred-and-ninety days after the conclusion of those proceedings in which to file his habeas action. Here, the state court proceedings concluded when the Michigan Supreme Court denied Petitioner's application for leave to appeal on April 13, 2007.[4] The statute of limitations in this case therefore expired on or about January 28, 2008–two-hundred-and-ninety days after the Michigan Supreme Court denied Petitioner's application for leave to appeal.

Petitioner filed his habeas petition with this court on April 14, 2008, almost three months after the expiration of the one-year statute of limitations. Consequently, Petitioner is barred from habeas relief by the untimely filing of his petition.

## B. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the Court has

---

[4]*See Lawrence v. Florida*, 549 U.S. 327 (2007) (an application for state post-conviction review is not pending after the state court's review is complete).

studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate that a plain procedural bar is present requiring the dismissal of Petitioner's petition, and no certificate of appealability is therefore warranted. Nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

### IV. CONCLUSION

Accordingly, IT IS ORDERED that Respondent's "Motion to Dismiss for the Failure to Comply with the One-Year Statute of Limitations" [dkt. # 5] is GRANTED, and Petitioner's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" [dkt. # 1] is DISMISSED with prejudice. IT IS FURTHER ORDERED that the Court DECLINES to issue Petitioner a certificate of appealability and an application for leave to appeal *in forma pauperis*.

DATED: February 4, 2009                    **s/Anna Diggs Taylor**
                                            ANNA DIGGS TAYLOR
                                            UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 4, 2009.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager